UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RENAISSANCERE EUROPE AG, US BRANCH, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:24-cv-00118-O |
| STARWIND SPECIALTY INSURANCE SERVICES, LLC, | § § § § | |
| Defendant. | § § § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant's Motion to Dismiss (ECF No. 11), filed April 5, 2024; Plaintiff's Response (ECF No. 14), filed April 26, 2024; Defendant's Reply (ECF No. 18), filed May 10, 2024; Plaintiff's Sur-Reply (ECF No. 21), filed May 20, 2024; and Defendant's Reply to the Sur-Reply (ECF No. 22), filed May 28, 2024. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED in PART** and **DENIED in PART**.

**I.   BACKGROUND[1]**

RenaissanceRe Europe AG, US Branch ("RenRe" or "Plaintiff") is a reinsurance company that wrote reinsurance on a proportional and excess of loss basis. Starwind Specialty Insurance Services, LLC, formerly known as American Team Managers, Inc. ("ATM" or "Defendant"), is an insurance wholesaler and managing general agent that provides underwriting services, claims handling, and insurance products for companies, including commercial transportation trucking

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1. At this stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

1

businesses. In September of 2017, RenRe and ATM entered into the Quota Share Reinsurance Agreement ("QSRA") setting forth the reinsurance arrangement between RenRe, ATM, and United Specialty Insurance Company ("USIC"), whereby ATM was to serve as the General Agent for policies of insurance issued by USIC and reinsured by RenRe. At that same time, the Parties also entered the General Agency Agreement ("GAA") to appoint ATM as the General Agent to perform the functions and duties necessary under the QSRA. Both the QSRA and the GAA incorporate one another by reference.

As a part of the QSRA, RenRe obligated itself to accept 100% of all USIC's gross liability under all policies. All loss settlements made by USIC or ATM under the terms of the QSRA are unconditionally binding upon RenRe in proportion to its participation. In exchange, RenRe benefited proportionately in all salvage and recoveries. The QSRA also empowered ATM "to accept notice of and investigate any claim arising under any of the Policies, to pay, adjust, settle, resist or compromise any such claim, unless the Company specifically directs to the contrary with respect to any individual claim" and required ATM to "exercise the authority granted [t]hereunder in good faith and toward the end of paying any and all valid claims."

ATM later entered into a Claims Services Agreement ("CSA") with North American Risk Services, Inc. ("NARS") to allow NARS to act on behalf of ATM in the management, investigation, and adjustment of claims, the management of litigation against USIC insureds, and the settlement of claims within USIC policy limits. Under the CSA, NARS acted as the third-party claim administrator on behalf of ATM to adjust the claim arising out of the Accident as defined below.

On March 8, 2018, a three-car auto accident occurred in Los Angeles. A freight tractor driven by insured Dennis Alonso ("Alonso") rear-ended a SUV, pushing it into another vehicle. In other words, Alonso created a three-car pileup ("Accident").

About three months later, NARS confirmed Alonso's liability for the accident. And on November 29, 2018, the driver and passengers ("Underlying Plaintiffs") of the SUV Alonso hit commenced litigation against him ("Underlying Action"). In December 2018 and December 2019, the Underlying Plaintiffs issued separate global policy limit settlement demands. ATM rejected both demands and did not advise Alonso or the insurer of either demand. After ATM's rejection, the Underlying Plaintiffs contended that the policy limit was open because ATM and/or NARS acted in bad faith by failing to accept the policy limit settlement demands and separately settling other claims from the Accident that reduced the available policy limits.

Trial in the Underlying Action commenced in June 2022, resulting in a jury verdict's award of $45,162,890.33 in total damages. The Court later remitted the total damages to $37,427,024.30 and found that the Underlying Plaintiffs were entitled to $303,499.67 in costs and prejudgment interest in the amount of $12,776,458.20. ATM declined to appeal the trial verdict and only pursued an appeal on prejudgment interest.

In January 2023, the Underlying Plaintiffs issued correspondence again accusing "the insurance company" of "bad faith handling" of the Underlying Action. The Underlying Plaintiffs asserted that the amount owed for the judgment exceeded $51 million, with interest accruing daily, and indicated that exposure for the judgment was likely to fall in the $60 million range "when it is all said and done," or potentially more. The Underlying Plaintiffs then demanded $50 million to fully resolve the Underlying Action and provided an acceptance deadline of February 20, 2023.

A month later, ATM tendered the remaining policy limits of $924,431.81 in partial satisfaction of the judgment. Once the insurer and RenRe were provided notice of the verdict, several requests were made for ATM's records for the underlying claim to assess the Underlying Plaintiffs' bad faith allegations. ATM refused to provide complete records in response to the requests, and still has not provided complete file materials.

The insurer, Underlying Plaintiffs, and Alonso subsequently agreed to engage in private mediation, which resulted in a confidential settlement agreement and release. In accordance with the terms of the QSRA and GAA, RenRe was ultimately responsible to pay for the defense of the Underlying Action, following the rejection of the policy limit demands, and fund the confidential settlement of the Underlying Action.

RenRe subsequently filed suit against ATM brining claims for breach of contract, implied indemnity, and declaratory relief. The Defendant's filed a Motion to Dismiss all claims which is now ripe for review.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Äshcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court may not accept legal conclusions as true, but when well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 678–79.

### III. ANALYSIS

Defendant contends that Plaintiff's claims for (a) breach of contract, (b) implied contractual indemnity, and (c) declaratory relief should be dismissed. For the reasons stated below, the Court **GRANTS** Defendant's Motion to Dismiss the implied contractual indemnity and declaratory judgment claims but **DENIES** Defendant's request to dismiss the breach of contract claim.

### A. Breach of Contract

Defendant asserts that Texas's four-year statute of limitations bars RenRe's breach of contract claim, and even if does not, Plaintiff does not have standing to bring the claim. The Court disagrees.

Texas law imposes a four-year statute of limitations to breach of contract claims. *See* Tex. Bus. & Com. Code Ann. § 2.725. "Under Texas law, the question of when a cause of action accrues is a matter of law for the court to decide[.]" *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566-67 (Tex. 2001)). A cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). A legal injury is an injury that produces a cause of action "by reason of its being an invasion of a plaintiff's right." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quotation omitted). Thus, breach of contract claims normally accrue when the contract is breached even if the Plaintiff did not know the extent of the injury. *Smith*, 490 F.3d at 387.

Here, Plaintiff alleges that Defendant initially breached the QSRA and GAA in 2018 and again in 2019 when it rejected the Underlying Plaintiffs' global policy limit settlements.[2] These

---

[2] Pl.'s Compl. 8–10, ECF No. 1.

allegations standing alone would place Plaintiff's claims outside of the statute of limitations. However, Plaintiff asserts that its breach of contract claim is not barred due to the continuing violations theory. Specifically, Plaintiff asserts that Defendant "continually breached the QSRA and GAA throughout the Underlying Action following the rejection of the early settlement demands and even after trial."[3] By the Court's estimate, Plaintiff alleges that Defendant breached the QSRA and GAA as late as Spring 2023 when Defendant refused to provide complete records in response to the Plaintiff's request for documents.[4]

The Plaintiff's Complaint at this stage plausibly implicates the existence of a continuing breach of contract that contains numerous allegations of wrongful conduct by the Defendant such as (i) rejection of global policy limit settlements, (ii) failing to consider extra-contractual insurance coverage issues, (iii) failing to report to Plaintiff that the Underlying Action involved a demand in excess of policy limits, and (iv) failing to provide Plaintiff with the available records.[5] Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim as time barred. *See Opheim v. Wells Fargo Bank*, No. 3:16-CV-1097-N-BK, 2016 WL 8715662, at *4 (N.D. Tex. Nov. 9, 2016), *report and recommendation adopted*, No. 3:16-CV-1097-N-BK, 2016 WL 8711735 (N.D. Tex. Dec. 16, 2016) (holding that the continuing violation doctrine applied when Defendant wrongfully placed an LPI on Plaintiff's home, deemed payments to be in default, reported the default to credit agencies, refused to correct the error over a four year span, and evicted the plaintiff from his home); *Lucas v. Evans*, No. 2:16-CV-10-KS-MTP, 2016 WL 1178768, at *1 (S.D. Miss. Mar. 24, 2016) (finding that the plaintiff had stated a claim of continuing breach of contract where

---

[3] Pl.'s Resp. 12, ECF No. 14.
[4] Compl. 12, ECF No. 1.
[5] *Id.*

he alleged, and provided evidence, that the defendants had missed every payment owed, including at least one that fell within the statute of limitations).

Additionally, Plaintiff has standing to assert these claims. Defendant concedes that it signed the QSRA and GAA, but argues that RenRe cannot invoke it because Tokio Millennium Re AG, US Branch, not RenRe, signed the agreements. But RenRe has established it is the same company as Tokio, now operating under a different name. RenRe tendered documents showing that Tokio changed its name to RenaissanceRe Europe AG, US Branch.[6] "Under ordinary legal principles, a contracting party that has merely changed its name is still a contracting party." *In re H & R Block Fin. Advisors, Inc.*, 235 S.W.3d 177, 178 (Tex. 2007) (citing *Coulson v. Lake LBJ Mun. Util. Dist.*, 781 S.W.2d 594, 595 (Tex. 1989); *Texas Co. v. Lee*, 157 S.W.2d 628, 630 (1941)). Thus, Plaintiff's change of name does not prevent it from invoking the QSRA or the GAA.

Accordingly, Defendant's Motion to Dismiss Plaintiff's breach of contract claim is **DENIED**.

### B. Implied Contractual Indemnity

Defendant next asserts that circumstances required to bring a claim for implied contractual indemnity do not exist in this case.[7] The Court agrees.

Normally, the right to "indemnification generally arises by express contract, the right also exists whenever the relation between several parties is such that either in law or in equity there exists an obligation on the part of one party to indemnify the other." *Am. Alloy Steel, Inc. v. Armco, Inc.*, 777 S.W.2d 173, 175 (Tex. App.—Houston [14th Dist.] 1989, no writ) (citing 14 Tex. Juris. 3d *Contribution and Indemnification* § 15 (1981)). There is no contractual provision for indemnity

---

[6] Req. for Jud. Notice ¶ 1, App. 15–19. Also incorporated into the Complaint by reference. *See* Pl.'s Compl. 1, ECF No. 1.
[7] Def.'s Mot. to Dismiss 9, ECF No. 11.

in this case. Therefore, the Court must determine if the relationship between Plaintiff and Defendant implies the right to indemnity.

Courts in Texas recognize an implied right of indemnification on the basis of agency or surety principles or vicarious liability. *See Mercedes-Benz of North America, Inc. v. Dickenson*, 720 S.W.2d 844, 857–58 (Tex.App.—Fort Worth 1986, no writ) (under general rules of agency, agent is entitled to indemnity when its liability arises from conduct performed for benefit and under direction of principal as a good faith execution of the agency relationship); *Lawyers Title Co. of Houston v. Authur,* 569 S.W.2d 578, 581 (Tex.Civ.App.—Waco 1978, no writ) (title company became indemnitor when employee assured defendant buyer that "everything necessary to the closing had been accomplished"); *Texas Constr. Associates, Inc. v. Balli,* 558 S.W.2d 513, 519–20 (Tex.Civ.App.—Corpus Christi 1977, no writ) (contractor and its surety entitled to indemnity against subcontractor for attorney's fee judgment because "without consideration, acted as guarantors of the obligations of Subcontractor to his suppliers").

This case, however, does not involve agency, surety, or vicarious liability relationships. Instead, Plaintiff and Defendant were parties to a contract with the freedom to negotiate its terms based on their own needs and circumstances. Plaintiff could have negotiated an indemnity provision in the QSRA or GAA but it did not. *See Alloy Steel*, 777 S.W.2d at 176 (declining to imply a right to indemnity when parties were free to negotiate the extent of liability).

Ultimately, the relationship between Plaintiff and Defendant is not one that convinces the Court to imply a right to indemnity. According, Defendant's Motion to Dismiss Plaintiff's claim for an implied right of indemnity is **GRANTED.**

8

### C. Declaratory Relief

Finally, Defendant contends that RenRe's request for declaratory relief should be denied because it is redundant of its breach of contract claim. The Court agrees.

The Court has broad discretion in determining whether to entertain a declaratory judgment action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (noting that the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant"). Although a court may not dismiss a request for declaratory relief "on the basis of whim or personal disinclination...the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989).

Courts frequently "reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." *S Flanagan v. Chesapeake Expl., LLC*, No. 3:15-CV-0222-B, at *4 (N.D. Tex. Nov. 4, 2015)(citing *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 07-CV-1799, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008) (dismissing declaratory judgment claim as entirely repetitive and unnecessary); *Xtria LLC v. Tracking Sys., Inc.*, No. 07-CV-0160, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing declaratory judgment action under Rule 12(b)(6) where it duplicated an existing breach of contract claim); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 05-CV-0880, 2006 WL 3691003, at *17 (N.D. Tex. Dec. 14, 2006) (same); *Albritton Props. v. Am. Empire Surplus Lines*, No. 04-CV-2531, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005) (granting Rule 12(b)(6) motion dismissing counterclaim for declaratory judgment where the disputed issues were already pending before the court); *Kogul v. Xspediou Mgmt. Co.*, No. 04-CV-2518, 2005 WL

1421446, at * 4 (N.D. Tex. June 1, 2005) (dismissing declaratory actions that sought resolution of matters already to be resolved in the ongoing lawsuit)).

Plaintiff seeks a declaration concerning the Parties' respective rights and duties under the QSRA and the GAA. Any determination concerning the rights and duties under the QSRA and GAA can be resolved through the breach of contract claim making the declaratory relief claim redundant. Accordingly, the Defendant's Motion to Dismiss Plaintiff's declaratory relief claim is **GRANTED.**

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss the implied indemnity and declaratory relief claims but **DENIES** the Motion to Dismiss Plaintiff's breach of contract claim.

**SO ORDERED** on this **8th day** of **August 2024**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE